THOMPSON *et al.* v. STATE *ex rel.* COOKSEY *et al.*

No. 1285.   Opinion Filed March 8, 1910.

(108 Pac. 398.)

1.    MANDAMUS—Issuance of Writ—Procedure—Parties. It is the better practice to issue the writ of mandamus in the name of the state on the relation of the party or parties interested, although such writ may issue in the name of such party under the Code provision requiring the real party in interest to sue.

2.    MANDAMUS—Jurisdiction. That part of section 10, art. 7, of the state Constitution, which provides that "the district courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and other writs, remedial or otherwise, necessary or proper to carry into effect their orders, judgments, or decrees," constitutes a grant of distinct jurisdiction, not depending on other provisions defining classes of cases or amounts in controversy over which also jurisdiction is given, and gives the substantive power to issue the writs named in all cases where courts of law or equity under settled rules would have the power to issue them, whether they be necessary to enforce some jurisdiction given by the other provisions or not.

3.    MANDAMUS—Jurisdiction—Issuance in Vacation. The judges of the district courts have authority, under that part of section 10, art. 7, of the Constitution, empowering the district courts and the judges thereof to issue writs of mandamus, etc., to issue in vacation a mandamus notwithstanding the right of trial by jury is preserved in the bill of rights, and, if it be conceded that a respondent in mandamus is entitled to a jury trial on disputed questions of fact, the only consequence is that the judge cannot then grant the writ in vacation.

  (Syllabus by the Court.)

*Error from District Court, Greer County; G. A. Brown, Judge.*

Thompson *et al.* v. State *ex rel.*

Action by the State, on the relation of W. H. Cooksey and others, for writ of mandamus to J. F. Thompson and J. M. Lassiter. From an order granting the writ, defendants bring error. Affirmed.

*Eagin & Eagin* and *Burford & Burford,* for plaintiffs in error. —Citing: 13 Enc. Pl. & Pr. 630; Wilson's Rev. & Ann. St. 1903, sec. 3, c. 45, p. 821; 26 Cyc. 479, notes 31, 32, 33; *Territory v. Railway Co.,* 2 Okla. 108; *Earle v. Earle,* 27 Kan. 538; *Railroad Co. v. Keeler,* 31 Kan. 439; 23 Cyc. 551, 675-677; Wilson's Rev. & Ann. St. 1903, c. 66, art. 15, sece. 255, 278; c. 66. art. 33; Const. Okla., art. 2, sec. 19.

*Thacker & Thacker,* for defendants in error.—Citing: *Rider v. Brown,* 1 Okla. 244; *Collet v. Allison,* 1 Okla. 42; *U. S. ex rel. v. Railroad Co.,* 3 Okla. 470; *Webster v. Dillon,* 7 Okla. 576; *Martin v. Clay,* 8 Okla. 50; *Wyman v. Herard,* 9 Okla. 35; *Helm & Son v. Briley,* 17 Okla. 314; 15 Enc. Pl. & Pr. 476, 632-635; *Robbett v. State,* 10 Kan. 9; Wilson's Rev. & Ann. St. 1903, Secs. 4884, 4886-4888, 4890-4892; Const Okla., art. 7, sec. 10; 12 Enc. Pl. & Pr. 260; 13 Enc. Pl. — Pr. 716-719.

KANE, J.  This case in the court below was entitled State of Oklahoma, ex rel, W. E. Cooksey, et al., Plaintiff, v. J. F. Thompson and J. M. Lassiter, Defendants.  The petition alleged, in substance, that the plaintiffs and defendants were all resident citizens, qualified electors, taxpayers owning both real and personal property, and public school patrons having children within scholastic years residing with them in and for school district No. 17 of Greer county; that defendant, J. F. Thompson was and is the director, and that said J. M. Lassiter was and is the treasurer, and W. J. Miller, Jr., was and is the clerk composing the school board of said district; that an election was lawfully held within said district for the purpose of determining the question of issuing four bonds of said school district to the amount of $2,000, for the purpose of purchasing a site for a school building, erecting a school building thereon, and purchasing school furniture for same; that more than three-fifths of the voters of said district voting at said election declared by their ballots in favor of and authorized the issuance of said

bonds, which result of said election was duly ascertained and declared by the judges of said election, composed of J. C. Woody, instead of the said J. M. Lassiter, and of the said J. F. Thompson and W. J. Miller, Jr., and the said board made the same a matter of record, minus the signature of J. F. Thompson and J. M. Lassiter, so that the said board has long since been and is now in duty bound to issue said bonds, over the official signature of the said J. F. Thompson, as director and the said W J. Miller, Jr., as clerk, and to sell and dispose of the same in accordance with said purpose and the law in this regard, after registering the same with a transcript of all proceedings in voting said bonds with the State Auditor and with the county clerk, and, as a further prerequisite to the sale of said bonds, said board should have made and certified copies thereof to the State Auditor, and the county clerk should have reported an order for the necessary tax to pay interest thereon, and provide a sinking fund to pay the principal; that, although often requested, the defendants and each of them have wholly failed and refused, and still fail and refuse, to perform such duties devolving upon them by virtue of the law and their official positions. A writ of mandamus was prayed for requiring the defendants to perform said alleged duties. Thereafter an alternative writ was issued.

The defendants filed their answer thereto, the averments of which it is not necessary to notice in reviewing the questions raised on appeal, and thereafter the cause came on to be heard before the Honorable G. A. Brown, at his chambers and in vacation, and at a time when no term of his court was in session, and, after hearing the allegations of the parties and the testimony of witnesses and arguments of counsel, said judge took said cause under advisement, and afterwards, at his chambers and in vacation, and at a time when no term of court was in session in said county and district, found the issues in said action in favor of plaintiffs and against the defendants, and directed an order that a peremptory mandamus be issued against the defendants. To reverse this order of the court this proceeding in error was commenced.

The grounds upon which counsel for plaintiffs in error seek to

reverse the judgment of the court below are stated by them in their brief as follows: (1) The plaintiffs and relators are not the real parties in interest. (2) "Section 10, art 7, of the Constitution, vests in the 'district courts or any judge thereof' a limited power to issue writs of mandamus, 'where necessary or proper to carry into effect their orders, judgments or decrees,' and it would seem to follow that this exclusive grant of power to the Supreme Court to issue, hear, and determine writs of mandamus as an exercise of original jurisdiction operates as a denial of that function to any other court." (3) It was error to proceed with the trial of the disputed issues of fact in chambers and in vacation. (4) The parties were entitled to trial by jury, and did not waive the right by failing to demand a jury. Such demand in vacation would have been futile, as no jury could have been lawfully convened. (5) Final judgment cannot be rendered in vacation and at chambers.

On the first proposition, the Supreme Court of Oklahoma from a very early date has held that:

"It is the better practice to issue a writ of mandamus in the name of the territory on relation of the party interested, though, perhaps, such writ might issue in the name of such party under the Code provision requiring the real party in interest to sue." (*Rider v. Brown et al.,* 1 Okla. 244, 32 Pac. 341.)

In *Collet v. Allison,* 1 Okla. 42, 25 Pac. 516, it was held that:

"The writ of mandamus is one of the extraordinary remedies resorted to in cases where the usual modes of procedure cannot furnish the desired relief, and should be commenced in the name of the sovereign power on the relation of the party aggrieved."

The general rule is stated in 13 Enc. P. & P. pp. 632-635, as follows:

"In some instances a distinction has been made between public duties due the state in its sovereign capacity and those public duties affecting all or a large number of the citizens. When the duty is of the latter kind, it is held that a private citizen may be the relator in a mandamus proceeding to enforce it. In some states it is held that a writ of mandamus may be granted upon the application of any person who is a citizen, resident, or taxpayer, though he may be affected no more than other persons. A citizen has been held to be a proper relator in cases relating to elections, the

rescinding of appointments, taxation, the collection of assessments; highways, liquor laws, city ordinances, public schools, the selections of a county superintendent, municipal aid to a railroad company, the operation of street cars, location of county offices, the removal of a county seat, the appointment of a board of health, the publication of state laws, and the striking of an act of the Legislature from the register. A special interest has been held unnecessary to entitle a person to institute mandamus proceedings to revoke a license or a permit.  *  *  *"

All other questions raised by counsel for plaintiffs in error are fully discussed and decided to our satisfaction in *Thorne, Judge, v. Moore, et al.*, 101 Tex. 205, 105 S. W. 985. That was an original application to the Supreme Court of Texas for a writ of mandamus to compel the Honorable Gordon Boone, judge of the Twelfth judicial district, to vacate an order made by him at chambers, in Madison county, on the 6th day of November, 1907, awarding a peremptory mandamus to relator, as county judge of Leon county, requiring him to make the statutory publication of the result of a local option election held in the town of Oakwood on the 23d day of September, 1907. The question raised involved the construction of section 6 of article 5 of the Constitution of the state of Texas, which defines the power and jurisdiction of district courts and the judges thereof, and is identical in meaning with that part of section 10, art. 7, of our Constitution which provides:

"The district courts, or any judge thereof, shall have power to issue writs of *habeas corpus*, mandamus, injunction, *quo warranto*, certiorari, prohibition, and other writs, remedial or otherwise, necessary or proper to carry into effect their orders, judgments, or decrees."

Mr. Justice Williams, who delivered the opinion for the court, says:

"Section 8 of article 5 of the Constitution, which defines the power and jurisdiction of the district court and the judges thereof, provides: 'And said court and the judges thereof shall have power to issue writs of *habeas corpus*, mandamus, injunction, and certiorari, and all writs necessary to enforce their jurisdiction.' This provision has been construed as giving the substantive power to issue the writs named in all cases when courts of law or equity,

under settled rules, would have the power to issue them, whether they be necessary to enforce some jurisdiction given by the other provisions or not. This provision is in itself a grant of distinct jurisdiction and powers which do not depend upon the other provisions defining classes of cases or amounts in controversy, over which also jurisdiction is given. *County of Anderson v. Kennedy,* 58 Tex. 616. The well-settled construction of such a phrase as 'said court and the judges thereof' is that it means the court when in session, and the judges acting in vacation. The language, therefore, equally empowers the court when in session and the judge, when the court is not in session, to issue the writs. The power is conferred upon the judge in the same language that confers it upon the court. Unquestionably the court has power to issue the peremptory mandamus. Now, then, can the same words that grant it to the court be held not to have granted it to the judge? What these writs are and in what character of actions and under what circumstances they may be used the Constitution does not say. It assumes, which is true, that their scope and operation, the rights they may be used to protect, or the wrongs they may be used to prevent, or redress, are settled and defined by the already existing principles of law, and vests the power to employ them in accordance with these principles in the courts and judges. The provision must, therefore be construed and applied in connection with the rules of law by which the use of the writs must be controlled. Upon this idea it may be argued that the power given to the judges was that to issue the alternative writ of mandamus, while the power to issue the peremptory writ was that vester in the court itself. The Constitution suggests no such distinction, but if, by reference to the law existing when it was adopted, we could see that such a difference had always been clearly made in this state, and that power in the judges to issue an alternative writ would possess some real efficacy, would give some substantial force to the provision quoted, we might find some strength in the position. There has been a terminology brought into this state from that employed elsewhere which recognizes two writs of mandamus, the alternative and the peremptory, or absolute. But the alternative writ has no such real place in our procedure as it has elsewhere. With us all that need precede the final writ is a notice, whatever it may be called, sufficient to give opportunity for the hearing. *Griffin v. Wakelee,* 42 Tex. 513; *Houston v. Emery,* 76 Tex. 282, 13 S. W. 264; *Id.,* 76 Tex. 321, 13 S. W. 266; *Bradley v. McGrabb,* Dallan, Dig. 508, 509. In the first case, Judge

Moore points out the difference between the writ of mandamus and the procedure necessary to secure it, as they obtain in this state, and the common law writ from which ours takes its name, and says: 'The relief sought to be effected through its aid is asked, as in any other case, by a petition alleging the facts by virtue of which it is claimed, with a prayer for such judgment as the facts warrant. The defendant is served and required to answer as in any other suit, and the case proceeds to trial and judgment as any other action, and there is no distinguishable difference in principle in the course of proceeding and result attained in it and any other suit in the district court. When the judgment is rendered by the court unless superseded or suspended by writ of error or appeal, it is carried into effect by the appropriate writ for this purpose, termed in the statute a "writ of mandamus," from analogy, no doubt, drawn from the nature of the matters complained of in the petition to cases in which relief is granted by this writ at common law. Plainly, then, unless we discard principles, and are controlled merely by names, it must be treated and regarded as a judicial writ, based upon and issuing by virtue of, and to carry into effect a judgment of the district court. And so it has been in effect held by the Supreme Court of the United States.' With this definition of the writ and the procedure incident to it before them, the framers of the Constitution empowered not only the district courts, but the district judges, to issue it. It is apparent from this that no power but that to issue the absolute writ would be of any efficacy in the hands of the district judge, since that which was formerly called the alternative had been superseded by a mere notice to show cause or to answer. The power given by the Constitution to the judge to issue a mandamus cannot be frittered away by holding it to be a mere power to issue a notice which the clerk can issue as well as he. In the two cases in 76 Tex. 13 S. W., an ordinary citation was held to be sufficient. But it is said that the existence of such a power in the district judges would not consist with the right of trial by jury preserved in the bill of rights. The right of trial by jury exists only with respect to disputed questions of fact. It could not be said to exist in all cases of mandamus, many of which, as does this one, depend upon pure questions of law arising upon admitted facts. Therefore this right given its broadest scope does not conflict with the existence of the power in question. If it be conceded for the purposes of this case that a respondent is entitled to a jury trial whenever in such a case a disputed question of fact essential to its decision arises, and that the judge cannot lawfully

provide such a trial in vacation, the only consequence would be that the judge could not then grant the writ because of the constitutional right thus arising as an impediment. It would also be true that the court, if in session, could not in such a case grant the writ until the facts essential to its issuance had been found by a jury. This court cannot issue the writ when the facts essential to the applicant's right are in dispute, but it nevertheless has the unquestioned power when the facts are admitted. The right of trial by jury, therefore, does not negative the existence of the power in question. The contention that it does would make one provision destroy another in the same Constitution. If it is true that as the statutes now stand the judge in vacation cannot provide for the trial of issues of fact in such cases, it is not true by reason of any provision in the Constitution; the Legislature, so far as we can now see, having full power to make provision for the case. The argument therefore loses its force as affecting the construction of the Constitution."

As the foregoing reasoning of the Supreme Court of Texas is satisfactory to us, as far as it pertains to the questions involved in the case at bar, we adopt its opinion.

The judgment of the court below is affirmed.

Dunn, C. J., and Hayes and Turner, JJ., concur; Williams, J.. absent and not participating