ROSS, TRUSTEE ET AL. *v.* CHAMBERS.

[No. 27,066. Filed May 24, 1938.]

224

*Brady & Watson, Philip Lutz, Jr.,* Attorney-General, and *Paul K. Shepard,* Deputy Attorney-General, for appellant.

*Horace G. Murphy,* for appellee.

SHAKE, J.—This is an appeal from a judgment in mandate rendered in an action brought by the appellee, a justice of the peace of Center Township, Delaware County, Ind., against the appellant Carl E. Ross, as trustee of said township. The suit was to compel the trustee to pay the appellee a claim for salary and an allowance for office rent.

The action involves the construction and validity of §5-1701 Burns' Ann. St. 1933 (§2008 Baldwin's Ind. St. 1934), Acts of 1913, Ch. 308, and §5-1702 Burns 1933 (§1840 Baldwin's Ind. St. 1934), Acts of 1913, Ch. 323. These statutory provisions will be referred to in this opinion by their chapter numbers. Both were passed at the same session of the General Assembly, both received the approval of the Governor on the same day, both became effective at the same time, and both carried clauses repealing all laws in conflict therewith.

Chapter 308 is a general act entitled "An Act concerning justices of the peace, presenting their number and fixing their compensation." The text of the act prescribes the number of justices of the peace to be elected in each township of the state, fixes the fees to be charged by

these officers, and contains specific provisions relative to townships of certain sizes. Among these provisions is the following: "That in any township in the state having therein a city of not less than forty-five thousand and not exceeding one hundred thousand population, according to the last preceding United States census . . . the justices of the peace of such township, and each of them, shall receive . . . a salary at the rate of one thousand dollars per annum . . . and each of them shall receive for office rent, unless the county commissioners in the county embracing cities of the population herein mentioned shall furnish each of said justices an office in the court house of said counties rent-free, the sum of one hundred fifty ($150) dollars per annum . . ."

Chapter 323 is entitled "An Act concerning justices of the peace in townships having one or more cities with a combined population of not less than 45,000 and not more than 60,000 and repealing all laws in conflict herewith." It provides: "That justices of the peace in townships having one or more cities with a combined population according to the last preceding United States census of not less than 45,000 and not more than 60,000 shall receive from the township trustee $1,000 each per annum in full for their service. . . . *Provided, further,* That in no event shall the compensation provided herein exceed the amount paid to the township trustee by the justice of the peace in such township."

It was stipulated on the trial "that there is only one city in said Center Township, Delaware County, Indiana, namely, the city of Muncie, Indiana, which has a population of 46,548." It follows that if chapter 308 is the law, the appellee, as justice of the peace of said township, is entitled to receive a fixed salary of $1,000 per year, plus $150 per year for office rent, unless the board of commissioners of Delaware County provides him with office

accommodations in the court house. On the other hand, if chapter 323 is to prevail, the appellee will not be entitled to any allowance for office rent under any circumstances, and he will not be entitled to an annual salary of $1,000 unless the fees paid by him to the township trustee during the year equal that sum.

There are many rules of statutory construction to which courts may resort in construing and interpreting conflicting acts and provisions. It will not be necessary to set them all out in this opinion. We should, if possible, so construe the two acts before us·as to harmonize the same and give full force and effect to each. We find such irreconcilable conflict between them, however, that it is impossible to apply this rule in the present case. Both can not prevail and one must give way to the other.

In determining which of the acts shall stand as the law of the state, we become at once concerned with the question as to which of them is the last pronouncement of the General Assembly. The problem is not simple for the reason that, as pointed out above, both were passed, approved, and promulgated on the same date. The Governor's approval was the last essential step in the legislative process, excepting, of course, the administrative act of proclaiming them effective after the distribution of the printed laws by the Secretary of State. It was physically impossible for the chief executive to affix his signature to the two acts simultaneously. One or the other of them was actually signed first. There is no source for determining the precise time when the Governor approved these acts, or which of them first received his approval, as we are advised that no record was kept as to the hour and minute of approval by the chief executive of this state prior to 1933.

There is ample precedent for the proposition that this court may search the legislative history of an act to ascer-

tain the date and order of its adoption, but recourse to that rule is not helpful here, because we are most concerned with the order of executive approval, not disclosed by the official journals. There is likewise authority for the rule that the court may consider the order in which conflicting laws appear in the published acts of the General Assembly. But that, at most, is but a mere guide to aid the court, and is by no means conclusive, since the Secretary of State could have no reliable data relating to that subject not available to us.

We think the answer to the perplexing problem presented is to be found in the provisions of the acts themselves, and particularly to the language found in chapter 323. Among other things, it provides that justices of the peace who come within its purview "shall collect and account to the township trustee the same fees and in the same manner *as now provided by law* in townships having a city with a population of not less than 45,000 and not more than 60,000." (Our italics.) The language quoted must have had reference to Ch. 88, Acts of 1903, §1865 Burns 1908. That was a general act with reference to justices of the peace, similar to chapter 308 herein referred to, fixing the number thereof, the fees to be charged, and the salaries to be paid in certain instances. Among the provisions of the act of 1903 appears the following: "That in any township in the State having therein a city of not less than 45,000 and not more than 60,000 population, according to the last preceding United States census ... the fees named in this section ... shall be charged and collected by said Justices of the Peace, but for the use and benefit of the township in which said Justice of the Peace shall hold his office, and said fees, when collected, shall, by said several Justices, and each of them, quarterly, to wit, on the 31st day of March, the 30th day of June, the 30th day of Sep-

tember and the 31st day of December, in each year, be reported to and paid over to the Township Trustee of said township, to be by him entered in and accounted for as a part of the general funds of said township. . . ." It follows, that the act of 1903 must have been in full force and effect at the time that chapter 323 was adopted. But if chapter 308 was adopted prior to chapter 323, the act of 1903 was not in effect because it had been repealed by chapter 308. We therefore reach the inescapable conclusion that chapter 323 was adopted prior to chapter 308 and that chapter 308 is the last legislative pronouncement on the subject. Putting it conversely, if chapter 308 was first adopted and thereby repealed the act of 1903, there was no law upon the statute books applicable to cities with a population between 45,000 and 60,000, regulating the manner in which justices of the peace therein should collect and account to the township trustee for fees collected by them. We must indulge the presumption that the General Assembly had in mind the statutory law of the state relative to the subject-matter about which it was legislating, and we must likewise assume that the act of 1903 was effective and had not been repealed prior to the enactment of chapter 323.

The disposition of this subject as herein set forth would seem to be in harmony with the policy of courts in dealing with the interpretation and construction of statutes. As pointed out above, chapter 308 is a general law on the subject, while chapter 323 is one of limited application. It would be the better policy that courts should recognize and give vitality to general acts, rather than to those of restricted usefulness, when that can be done without violence to the well recognized rules of statutory construction. We hold, therefore, that chapter 323 was repealed by chapter 308, subsequently enacted.

The questions raised by this appeal are brought before

us by the overruling of the appellants' demurrer to the appellee's second amended complaint, and by the denial of the appellant's motion for a new trial. The lower court's rulings were, in each instance, in harmony with the views of this court as expressed in this opinion.

We therefore hold that there is no error, and the judgment is accordingly affirmed.